**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules**

**July 2, 2026**

# In the Court of Appeals of Georgia

A26A0301. NABEEL GROUP OF COMPANIES, INC. v. HALL
    COUNTY.

WATKINS, Judge.

Nabeel Group of Companies, Inc., the putative property owner in this case involving a Board of Commissioner's decision on a zoning issue, appeals from the superior court's order dismissing Nabeel's petition for review. The superior court dismissed Nabeel's petition on the ground that Nabeel was required to file a direct, de novo suit, rather than a certiorari proceeding. We granted Nabeel's application for discretionary review, and we now affirm the superior court's dismissal.[1]

---

[1] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required numbers of judges; however, voted in favor of considering the case en banc.

In ruling on a motion to dismiss, the trial court must accept as true all well-pleaded material allegations in the complaint and must resolve any doubts in favor of the plaintiff. Importantly, when a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the plain legal error standard of review.[2]

So viewed, the record shows that in 2021, the Hall County Board of Commissioners granted the then-property owner's application to rezone a tract of land at 5820 McEver Road from Agricultural Residential–III to Highway Business. The Board imposed nine conditions on the property, including, as Condition 5, that McEver Road shall be right turn exit only. In 2024, Nabeel—hoping to build a gas station and convenience store on the site—asked the Board to amend the zoning conditions to allow a full access drive off McEver Road. The Planning Commission recommended that the Board approve the request, but the plan drew public opposition and the Board ultimately denied Nabeel's request.

Nabeel filed a "Petition for Review to Superior Court" under OCGA §§ 5-3-1 et seq. and 36-66-5.1(a)(2). The County filed a motion to dismiss, arguing that the superior court lacked jurisdiction because Nabeel was required to file a de novo action,

---

[2] *Riverdale Land Group v. Clayton County*, 354 Ga. App. 1, 2 (840 SE2d 132) (2020) (citations and punctuation omitted).

not a petition for review. The superior court granted the County's motion and dismissed the action. We subsequently granted Nabeel's application for discretionary review,[3] and this appeal ensued.

## *The Zoning Procedures Law*

One of the statutory provisions upon which Nabeel based its petition for review was OCGA § 36-66-5.1(a)(2), the provision of the Zoning Procedures Law ("ZPL") that provides for superior court review of quasi-judicial zoning actions.

The ZPL describes two methods of obtaining superior court review of a local government's exercise of its zoning powers.[4] Generally, the superior court has *direct, de novo jurisdiction to hear constitutional challenges to legislative actions* and *appellate jurisdiction to review quasi-judicial decisions*. Specifically, the ZPL provides that:

> (1) Zoning decisions as described in this chapter, being legislative in nature, shall be subject to direct constitutional challenge regarding the validity of maintaining the existing zoning on the subject property or the validity of conditions or an interim zoning category other than what was requested in the superior court pursuant to its original jurisdiction over

---

[3] Case No. A25D0498 (Aug. 7, 2025).

[4] See *Alpha Land Partners*, 379 Ga. App. at 36-37(2).

3

declaratory judgments … and equity jurisdiction.… Such challenges shall be by way of a de novo review by the superior court[; while] (2) Quasi-judicial decisions as described in this chapter shall be subject to appellate review by the superior court pursuant to its appellate jurisdiction from a lower judicatory body and shall be brought by way of a petition for such review as provided for in Title 5…[5]

Nabeel insists that the Board's denial of its request to amend the property's zoning conditions was a quasi-judicial decision such that a petition for review was the appropriate method to challenge the Board's decision in the superior court. As support for this position, Nabeel argues that the Board's denial of its request does not fit within the definition of a "zoning decision" under the version of the ZPL that applies to this appeal. In that version, the term "zoning decision" was defined as a

final legislative action by a local government which results in: (A) The adoption or repeal of a zoning ordinance[6]; (B) The adoption of an

---

[5] OCGA § 36-66-5.1(a).

[6] In § 36-66-3(5) (2024), the ZPL defined "zoning ordinance" as

an ordinance or resolution of a local government establishing procedures and zones or districts within its respective territorial boundaries which regulate the uses and development standards of property within such zones or districts. The term also includes the zoning map adopted in conjunction with a zoning ordinance which

amendment to a zoning ordinance which changes the text of the zoning ordinance; (C) The adoption or denial of an amendment to a zoning ordinance to rezone property from one zoning classification to another; (D) The adoption or denial of an amendment to a zoning ordinance by a municipal local government to zone property to be annexed into the municipality; (E) The grant or denial of a permit relating to a special use of property; or (F) The grant or denial of a variance or conditions concurrent and in conjunction with a decision pursuant to subparagraph (C) or (E) of this paragraph.[7]

We recognize that, under the version of the ZPL applicable to this proceeding, the Board's denial of Nabeel's request — to amend zoning conditions which were previously imposed on the property as part of a rezoning — does not fit neatly within the enumerated list of "zoning decisions" that are legislative in nature.[8] However, the

---

shows the zones and districts and zoning classifications of property therein.

[7] OCGA § 36-66-3(4) (2024).

[8] The statute was amended effective July 1, 2025, and subsection (F) now reads: "The grant or denial of an application for a variance or the imposition or modification of conditions concurrent and in conjunction with a decision pursuant to subparagraph (C) or (E) of this paragraph, *or a subsequent modification to such a variance or condition.*" OCGA § 36-66-3(4) (2025) (emphasis added). Thus, under the 2025 version, it is abundantly clear that Nabeel's avenue for review of this decision was through a de novo proceeding. We view this as a clarification rather than as a change to the law.

Board's decision also does not fall squarely within the ZPL's definition of a "quasi-judicial" decision.[9] And upon consideration of the ZPL in its entirety, we find Nabeel's position to be unpersuasive. Crucially, pursuant to OCGA § 36-66-5.1(a)(1), the proper way to bring a "constitutional challenge regarding the validity of maintaining the existing zoning on the subject property or the validity of conditions" is through a direct, de novo proceeding in superior court. Existing precedent also suggests that Nabeel was required to bring a direct, de novo suit rather than a petition for review.[10]

---

[9] The governing version of the ZPL did not define the term "quasi judicial decision," but it provided that

> "Quasi-judicial officers, boards, or agencies" means an officer, board, or agency appointed by a local government to exercise delegated, quasi-judicial zoning powers including hearing appeals of administrative decisions by such officers, boards, or agencies and hearing and rendering decisions on applications for variances, special administrative permits, special exceptions, conditional use permits, or other similar permits not enumerated herein as a zoning decision, pursuant to standards for the exercise of such quasi-judicial authority adopted by a local government.

OCGA § 36-66-3(1.1) (2024).

[10] See *Hall County v. Cook Cmtys.*, 368 Ga. App. 536, 540–41 (890 SE2d 462) (2023) (developer properly brought a direct, de novo suit to raise constitutional attack against conditions that the County attached to the approval of his application for rezoning).

*Superior & State Court Appellate Practice Act*

As mentioned above, the other statutory provision upon which Nabeel based its petition for review was OCGA § 5-3-1 et seq., otherwise known as the Superior & State Court Appellate Practice Act ("SSCAPA"), which became effective on July 1, 2023.[11] The General Assembly's stated intention for enacting the SSCAPA was to "[p]rovide a single, modern, and uniform procedure called a 'petition for review' for appealing a decision made by a lower judiciary to a superior or state court, as authorized by the laws and the Constitution of this state[.]"[12] The SSCAPA provides that, with certain exceptions not applicable here, "the superior and state courts shall have appellate jurisdiction pursuant to this chapter over a final judgment of a lower judiciary."[13] Such appellate jurisdiction is invoked "by filing a petition for review with the clerk of the reviewing court."[14]

---

[11] See *City of Snellville v. Snellville Beverage Store*, 375 Ga. App. 690, 691 (917 SE2d 360)(2025).

[12] OCGA § 5-3-2(b)(1). See also *Alpha Land Partners, LLC v. City of Alpharetta*, 379 Ga. App. 35, 37(2) (927 SE2d 588) (2026).

[13] OCGA § 5-3-4(a).

[14] OCGA § 5-3-6(a).

The dissent concludes that, particularly in light of the SSCAPA, Nabeel's petition for review was sufficient to invoke the superior court's jurisdiction. We disagree. The Georgia Supreme Court has previously held that "a decision that is not quasi-judicial cannot be appealed by certiorari under OCGA § 5-4-1[.]"[15] It is true that § 5-4-1 has been repealed and replaced by the SSCAPA. However, the SSCAPA — by its terms — concerns judicial review of decisions by "a lower judicatory."[16] And the Act defines "decision" as a "formal or informal adjudication, decision, determination, judgment, order, ruling, or other *act of a judicatory that is judicial or quasi-judicial in nature*[,]"[17] and "judicatory" as a "court, official, board, tribunal, commission, municipal or county authority, council, or similar body *exercising judicial*

---

[15] *City of Cumming v. Flowers*, 300 Ga. 820, 833(6)(c) (797 SE2d 846) (2017). See also *Goddard v. City of Albany*, 285 Ga. 882, 884(1) (684 SE2d 635) (2009) (because the challenged decision was not quasi-judicial, superior court properly dismissed the petition for certiorari for lack of subject matter jurisdiction).

[16] See OCGA § 5-3-4(a) (providing that, with certain exceptions not applicable here, "the superior and state courts shall have appellate jurisdiction pursuant to this chapter over a final *judgment of a lower judicatory*[ ]" (emphasis added)). See also OCGA § 5-3-2(b)(1) (providing that, in enacting the SSCAPA, the General Assembly intended to "[p]rovide a single, modern, and uniform procedure called a 'petition for review' for appealing a *decision made by a lower judicatory* to a superior or state court[ ]" (emphasis added)).

[17] OCGA § 5-3-3(3) (emphasis added).

*or quasi-judicial powers* authorized by law."[18] Because the Board's denial of Nabeel's request to remove the zoning condition was legislative in nature rather than quasi-judicial, the SSCAPA does not apply to this proceeding, and the superior court correctly concluded that Nabeel was required to bring a direct, de novo action instead of a petition for review to challenge the Board's decision in superior court.

*Judgment affirmed. Padgett, J., concurs. McFadden, P. J., dissents.*

# In the Court of Appeals of Georgia

A26A0301. NABEEL GROUP OF COMPANIES, INC. v. HALL
COUNTY.

McFADDEN, Presiding Judge, dissenting.

The majority holds that the decision of the Hall County Board of Commissioners before us today was an exercise of zoning power described in the

---

[18] OCGA § 5-3-3(5) (emphasis added).

Zoning Procedures Law ("ZPL") as "legislative in nature," OCGA § 36-66-5.1(a)(1), and consequently that the board is not, for the purpose of this action, a "judicatory" as defined in the Superior and State Court Appellate Practice Act ("SSCAPA"). OCGA § 5-3-3(5). Because jurisdiction under the SSCAPA is limited, under OCGA § 5-3-2, to appeals from a lower judicatory, the majority reasons, we must affirm the superior court's dismissal of Nabeel Group of Companies' petition for review.

I cannot agree. In the first place OCGA § 36-66-5.1(a)(1) is not applicable here. I do agree that under the current version of that statute, the board's decision at issue in this case would fall under OCGA § 36-66-5.1(a)(1), and thus be designated a legislative action. But the current version is not applicable here. The earlier version of the ZPL that controls this appeal has a key language difference.

Under the language of the controlling version of the statute, the board's decision falls under the "quasi-judicial decisions" category described in OCGA § 36-66-5.1(a)(2), rather than the "zoning decisions" category described in OCGA § 36-66-5.1(a)(1) as "[l]egislative in nature." So the board's decsion is not subject to the procedure set out in that provision subsection (a)(1) which, under the majority's reasoning, is inimical to the SSCAPA.

More fundamentally, the majority's reasoning is incorrect. Its reasoning would revive the rigid formalism that the Civil Practice Act, the Appellate Practice Act, and the SSCAPA were enacted to abolish. So I respectfully dissent.

1. *The Zoning Procedures Law provides for review of the decision by way of a petition for review under the Superior and State Court Appellate Practice Act.*

The ZPL, OCGA § 36-66-1 et seq., establishes procedures governing judicial review of the exercise of zoning powers by local governments. OCGA § 36-66-2(a). As the majority notes, the ZPL states that "zoning decisions," which are "legislative in nature," are subject to direct constitutional challenge by way of de novo review in the superior court. OCGA § 36-66-5.1(a)(1).

Under the current version of the ZPL, the decision at issue in this case — the Hall County Board of Commissioners' denial of a request to amend a previously imposed zoning condition — is a "zoning decision" that would be a legislative action subject to de novo review under OCGA § 36-66-5.1(a)(1). That current version defines "zoning decision" to include "[t]he grant or denial of an application for a variance or *the imposition or modification* of conditions concurrent and in conjunction

3

with a decision pursuant to subparagraph (C)[1] or (E)[2] of this paragraph, *or a subsequent modification to such a variance or condition*." OCGA § 36-66-3(4)(F) (2026) (emphasis and footnotes supplied).

This case involves a modification. So the italicized language in the current version of that statutory definition would bring the decision in this case into the statutory definition of "zoning decision." Because we must "interpret a statute according to its meaning at the time of the enactment," however, "we place no weight on [a] subsequent amendment in construing the prior version of the statute." *Gray v. State*, 310 Ga. 259, 265(3) n.6 (850 SE2d 36) (2020). And that prior version does not include the italicized language. OCGA § 36-66-3(4)(F) (2024). It limits the scope of the definition of "zoning decision" to those grants or denials of conditions "concurrent and in conjunction with" the rezoning decision.

The decision at issue in this case, denying Nabeel Group's request to modify conditions imposed as part of a rezoning decision, was not "concurrent and in conjunction with" a rezoning decision, so under the governing version of the ZPL, it

---

[1] Subparagraph (C) concerns rezoning decisions.

[2] Subparagraph (E) concerns applications for special use of property.

was not a "zoning decision." OCGA § 36-66-3(4)(F) (2024). Thus, it did not fall within OCGA § 36-66-5.1(a)(1), was not "legislative in nature" by virtue of being a "zoning decision" under OCGA § 36-66-5.1(a)(1), and was not subject to the de novo procedure set forth in OCGA § 36-66-5.1(a)(1).

Our opinion in *Hall County v. Cook Cmtys*, 368 Ga. App. 536, 539 (890 SE2d 462) (2023), cited by the majority, does not hold otherwise, as that opinion concerned a type of decision — a rezoning decision — that fell within the statutory definition of "zoning decision" under the governing version of the ZPL. See OCGA § 36-66-3(4)(C).

2. *Dismissal is not appropriate even if the decision is subject to de novo review procedure of OCGA § 36-33-5.1(a)(1).*

Even if the Hall County Board of Commissioners' decision in this case was subject to the procedure set out in OCGA § 36-33-5.1(a)(1), Nabeel Group's petition for review would not be subject to dismissal.

That is because the distinction between a direct constitutional challenge under the ZPL and a petition for review under the SSCAPA is an empty formality. There is

no substantive difference between proceedings under them. Both the ZPL provision that is central to the majority's analysis and the SSCAPA provide for de novo review.

The ZPL, at OCGA § 36-66-5.1(a)(1), provides that "zoning decisions" are to be

> challenge[d] by way of a *de novo* review by the superior court wherein such review brings up the whole record from the local government and all competent evidence shall be admissible in the trial thereof, whether adduced in a local government process or not and employing the presumption that a governmental zoning decision is valid and can be overcome substantively by a petitioner showing by clear and convincing evidence that the zoning classification is a significant detriment to the petitioner and is insubstantially related to the public health, safety, morality, or general welfare[.]

(Emphasis supplied.)

The SSCAPA provides, "A reviewing court shall conduct a *de novo* proceeding under this chapter if a de novo proceeding is specified by law. Cases reviewed under this subsection shall be heard by the reviewing court without a jury unless a jury trial is ordered by the reviewing court and authorized by law." OCGA § 5-3-5(b) (emphasis supplied). The SSCAPA goes on to set out detailed procedures for bringing up the whole record. OCGA § 5-3-14.

Because there are no substantive differences between the de novo procedures under the ZPL and under the SSCAPA, the majority's analysis — even if it was sound — would show only that Nabeel Group affixed the wrong title to their pleading.

To support its reasoning, the majority would reanimate the repealed statutes providing for certiorari from superior courts, former OCGA § 5-4-1 et seq. The majority reasons that, because decisions that were not quasi-judicial could not be appealed by way of certiorari from superior court under that former law, they cannot be appealed through the SSCAPA.

Not so. Petitions for review are authorized from "*any request for review* of a final judgment filed in a reviewing court by a petitioner, including, but not limited to, any request for review formerly titled as a petition for writ of certiorari, petition for *writ of mandamus*, petition for *writ of prohibition*, or notice of appeal." OCGA § 5-3-3(9) (emphasis supplied).

As detailed above, appeals from zoning decisions request "de novo review," as specified in OCGA § 36-66-5.1(a)(1). The writs specified in OCGA § 5-3-3(9) include matters that could be described as a "direct" challenge. See OCGA § 36-66-5.1(a)(1).

7

In short, "zoning decisions" fall neatly into the catch-all phrase "including, but not limited to." OCGA § 5-3-3(9).

And even if we posit that the SSCAPA is not applicable, the question becomes what standard Nabeel Group's pleadings must satisfy. The only plausible answer is the Civil Practice Act. Under that Act, "There shall be one form of action, to be known as 'civil action." OCGA § 9-11-2. The Civil Practice Act is to "be construed to secure the just, speedy, and inexpensive determination of every action." OCGA § 9-11-1. "All pleadings shall be so construed as to do substantial justice." O.C.G.A. § 9-11-8 (f). "The well established rule in Georgia is that, under our system of notice pleading, the substance, rather than the nomenclature, of legal pleadings determines their nature." *Cotton v. Fed. Land Bank of Columbia*, 246 Ga. 188, 191, 269 S.E.2d 422, 425 (1980).

The Appellate Practice Act and the SSCAPA advance that same policy. The Appellate Practice Act similarly provides that it is to "be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case or refusal to consider any points raised therein, except as may be specifically referred to in this article." OCGA § 5-6-30.

The SSCAPA was enacted to remedy a status quo under which "many appeals from a lower judicatory to a superior or state court result in dismissal on complex procedural grounds and not on a decision on the merits." OCGA § 5-3-2(a). The express "intent of the General Assembly in enacting" it was, in part, to

> (1) Provide a single, modern, and uniform procedure called a "petition for review" for appealing a decision made by a lower judicatory to a superior or state court, as authorized by the laws and the Constitution of this state; [and]

> (2) Increase access to justice through the greater resolution of appeals on the basis of substantive issues rather than on complex procedural grounds[.]

OCGA § 5-3-2(b). And so in construing it the courts are directed, in part, to

> (1) Construe the provisions of this chapter broadly so as to render decisions based on the merits of each case and avoid dismissal of any case or refusal to consider any points raised therein unless such dismissal or refusal is expressly required by statute; [and]

> (2) Construe any petition for review filed under this chapter according to its substance, merit, and function and not merely its style, form, or title[.]

OCGA § 5-3-2(c).

The majority's reasoning is plausible. But through the Civil Practice Act, the Appellate Practice Act, and the SSCAPA, the General Assembly has directed us again and again not to shut the courthouse door on the basis of reasoning that is merely plausible.

I would reverse the superior court's order dismissing Nabeel Group's petition for review.